UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 14-14541-DJC |
| MARITIME TERMINAL, INC., | ) ) ) | |
| Defendant. | ) ) ) ) ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                          June 29, 2015

### I.     Introduction

Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") has filed this lawsuit against Defendant Maritime Terminal, Inc. ("Maritime") seeking a declaratory judgment that it owes no duty to defend or indemnify Maritime under Warehouse Legal Liability Policy No. 051766034 ("the Policy") in connection with three pending civil actions. Maritime has moved to stay the declaratory judgment action.[1]  D. 12.  For the reasons stated below, the Court ALLOWS the motion.

---

[1] This motion was originally filed as a motion to dismiss or, in the alternative, to stay.  D. 12.  At oral argument, Maritime withdrew the request for dismissal.  June 10, 2015 Hearing Tr. at 9:21-25.  The motion to dismiss is therefore denied as withdrawn.

1

## II. Standard of Review

Under the federal Declaratory Judgment Act, this Court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial . . . ." Wilton, 515 U.S. at 288.

## III. Factual Background

This factual summary is taken from the allegations in National Union's complaint, D. 4. National Union provided liability insurance to Maritime pursuant to the Policy, which operated from April 1, 2013 to April 1, 2014. D. 4 ¶¶ 22-23; see D. 4-6 at 23 (the Policy). The Policy covered "occurrences" during its period of operation that resulted in "liability of [Maritime] imposed upon [it] by law because of loss or damage to personal property owned by customers in the care, custody or control of [Maritime] for storage, under bills of lading, shipping or warehouse receipt . . . ." D. 4 ¶ 24. Maritime's cold storage warehouse at 276 MacArthur Drive, New Bedford, Massachusetts ("the Warehouse") was a covered location under the Policy. Id. ¶¶ 10, 25.

The Policy contained several exclusions and limitations. Exclusion "b" excluded coverage for damages caused by or resulting from "misappropriation, secretion, conversion, infidelity or any dishonest act on the part of [Maritime] or other party of interest, his or their

2

employees or agents, or others to whom the property may be entrusted (carriers for hire excepted)." Id. ¶ 31. Exclusion "e", as amended by Endorsement No. 7, excluded coverage for "loss, damage or expense [caused by] insects, inherent vice, deterioration dampness of atmosphere, inadequate warehouse temperature due to overcapacity, nor for wear and tear." Id. ¶ 29. Exclusion "k" excluded coverage for damages caused by or resulting from the "infidelity" of Maritime's officers, employees or persons to whom the insured property was entrusted. Id. ¶ 30. Exclusion "s" excluded coverage for loss or damages resulting from "breakdown of, failure or improper operating of any refrigeration machinery or equipment," id. ¶ 27, although Exclusion "s" provided coverage for loss due to spoilage or contamination resulting from "sudden and accidental breakdown of refrigeration equipment" and "the incorrect or improper setting of temperature controls by [Maritime]," id. ¶ 28.

Between February 19, 2014, and September 5, 2014, three seafood companies that had contracted with Maritime to store various frozen seafood products at its New Bedford warehouse – Alaskan Leader Seafoods, LLC ("Alaskan Leaders"), Kyler Seafood, Inc. ("Kyler Seafood") and Hygrade Ocean Products, Inc. ("Hygrade") – separately filed lawsuits ("the Underlying Actions") against Maritime. Id. ¶¶ 7-11; see D. 4-3 (Alaskan Leaders complaint); D. 4-4 (Kyler Seafood complaint); D. 4-5 (Hygrade complaint). Alaskan Leaders filed in the United States District Court for the District of Massachusetts, and Kyler Seafood and Hygrade filed in Bristol Superior Court. D. 4 ¶¶ 7-9. The three complaints allege that Maritime failed to keep the Warehouse between the agreed range of -5°F and -10°F. Id. ¶¶ 8-16. Alaskan Leader alleges that on or about August 24, 2013, it learned that Maritime "was, and had been, maintaining a temperature of +15°F within the cold store warehouse during the period commencing June 2013 up to and including August 2013," causing the frozen seafood cargo stored there to suffer

"irreparable harm and damage." Id. ¶ 13. Kyler Seafood and Hygrade allege that in or about July or August 2013, Maritime informed them that, "due to certain equipment breakdown at the Warehouse, the appropriate sub-zero temperatures had not been maintained for an unspecified period of time, and that [their] products likely had been compromised." Id. ¶ 14. The plaintiffs in the Underlying Actions allege that in August 2013, Maritime admitted that it had been having difficulties maintaining proper temperatures in the Warehouse and failed to notify them. Id. ¶ 15. They assert numerous claims against Maritime in the Underlying Actions, including breach of contract, breach of bailment, breach of the implied covenant of good faith and fair dealing, negligence and knowing and willful violation of Mass. Gen. L. c. 93A. Id. ¶¶ 17-20.

Maritime requested that National Union defend and indemnify it in the Underlying Actions and the insurer agreed to do so under a reservation of rights. Id. ¶¶ 33-34. National Union now seeks a declaration of its rights, duties and liabilities under the Policy with respect to the Underlying Actions. Id. ¶¶ 1, 35. National Union asserts that it is not obligated to defend or indemnify Maritime. Id. ¶¶ 37-42.

## IV. Procedural History

National Union instituted this declaratory judgment action on December 18, 2014. D. 4. Maritime moved to stay the action on February 10, 2015. D. 12. Maritime contends that National Union's rights, duties and liabilities under the Policy are already being litigated in the Underlying Actions and, therefore, the Court should stay National Union's declaratory judgment action pending resolution of the Underlying Actions. Id. The Court heard the parties on the pending motion on June 10, 2015 and took this matter under advisement. D. 24.

## V. Discussion

"The question for a district court presented with a suit under the Declaratory Judgment Act . . . is 'whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.'" Wilton, 515 U.S. at 282 (quoting Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942)). The Supreme Court has not provided an exclusive list of factors governing this analysis, but it has noted that district courts should look for guidance to the scope of the pending state court proceedings, the available state court defenses, and whether the claims of all parties in interest can be resolved in the state court proceedings. Id. at 283. Specifically, where "parallel proceedings . . . presenting opportunity for ventilation of the same state law issues [are] underway in state court," the Supreme Court held in Wilton that these considerations "clearly support" a court's decision to stay or dismiss a declaratory judgment action. Id. at 290. "A court in deciding whether to exercise its broad discretion to dismiss an action pending the outcome of a parallel state action should compare the nexus between the two suits, considering the totality of the circumstances." Petricca v. FDIC, 349 F. Supp. 2d 64, 67 (D. Mass. 2004).

The present motion seeks to stay the declaratory judgment action as to both National Union's duty to defend and duty to indemnify. The parties briefed these issues together, but the Court will focus its analysis on the duty to indemnify, which is triggered "when a judgment within the policy coverage is rendered against [the] insured." Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10 (1989). For the reasons set forth below, the Wilton factors weigh in favor of granting a stay as to both the duty to indemnify and the duty to defend.

    A.    **Parallel Proceedings**

The Supreme Court held that a district court "acted within its bounds in staying [an] action for declaratory relief where parallel proceedings . . . were underway in state court," Wilton, 515 U.S. at 290, but the Supreme Court has not defined what it means for proceedings to be "parallel." The First Circuit has not addressed this issue with respect to staying declaratory judgment actions, but it has broadly construed the term "parallel proceedings" in other contexts. See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 533 (1st Cir. 1991) (finding proceedings to be parallel for purposes of abstention despite lack of "perfect identity of issues"); Standard Fire Ins. Co. v. Gordon, 376 F. Supp. 2d 218, 226 (D.R.I. 2005) (noting that the First Circuit's "broad reading of 'parallel proceeding' in other contexts . . . strongly counsels in favor of a similar construction here [in the declaratory judgment context]"). A state proceeding is considered parallel to its federal counterpart where "substantially the same parties are contemporaneously litigating substantially the same issues" and there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." Mass. Biologic Labs. of the Univ. of Mass. v. Medimmune, LLC, 871 F. Supp. 2d 29, 36 (D. Mass. 2012) (internal quotation omitted).

   *1.   Same Parties and Claims*

Where the same parties are involved in related federal and state court actions and where all claims made in the declaratory judgment action in federal court can be adjudicated in state court, a stay of the declaratory judgment action may be appropriate. See Wilton, 515 U.S. at 283; Aetna Cas. & Sur. Co. v. Kelly, 889 F. Supp. 535, 540 (D.R.I. 1995). National Union is not a named party in the Underlying Actions. Maritime nonetheless argues that the proceedings are parallel insofar as National Union is an "indirect participant" in the Underlying Actions and its

claims can be satisfactorily adjudicated in the Underlying Actions under the Massachusetts declaratory judgment statute, Mass. Gen. L. c. 231A. D. 12 at 12.

Maritime is correct that an identity of parties is not required for proceedings to be considered parallel. There need only be an available procedural vehicle in state court by which the federal plaintiff, even if not a party in the state action, can resolve the issues raised in the federal action. See Standard Fire Ins. Co., 376 F. Supp. 2d at 226; see also United States Liability Ins. Co. v. Wise, 887 F. Supp. 348, 351-52 (D. Mass. 1995) (dismissing the insurer's declaratory judgment action and ruling that although the insurer was not a party to the underlying state court action and could not be joined or intervene, it could bring a separate declaratory judgment action in state court and seek consolidation with the existing state court action).

Given the availability of declaratory relief in the forums where the Underlying Actions are pending and National Union's indirect interest in the Underlying Actions, the Court finds that the absence of identity of parties between the Underlying Actions and the present case does not preclude a stay. See Aetna Cas. & Sur. Co., 889 F. Supp. at 540 (finding that the claims of all parties in interest could be adjudicated satisfactorily in the underlying tort litigation where the tort defendants' insurer was "an indirect participant in the underlying litigation and [had] the option of raising any coverage questions in state court" under the state declaratory judgment statute).

    2.  *Same Factual Issues*

"Where adjudication of a declaratory judgment action requires resolution of factual questions that will be litigated in the underlying state court proceeding, practicality and wise judicial administration would counsel against proceeding with the declaratory judgment action." Standard Fire Ins. Co., 376 F. Supp. 2d at 227. "If there are no common factual issues, it is less

7

likely that considerations of practicality and wise judicial administration would warrant a stay. On the other hand, if the declaratory judgment action presents the same factual issues that are the subject of the state court case, a stay may be appropriate." Aetna Cas. & Sur. Co., 889 F. Supp. at 540 (internal quotation omitted).

In the Underlying Actions, Alaskan Leader, Kyler Seafood and Hygrade allege that Maritime was negligent when it failed "to properly provide, inspect and maintain the condition of the Warehouse, including the refrigeration system." D. 4-3 ¶ 41; see D. 4-4 ¶ 81, D. 4-5 ¶ 44. They also assert claims for breach of contract and breach of bailment for Maritime's alleged failure "to store, warehouse, bail, keep and care for, protect and deliver [their] goods in the same good order and condition as at the time it received and accepted [the] goods for storage." D. 4-3 ¶ 37; see D. 4-4 ¶ 44, D. 4-5 ¶ 30. They further allege that Maritime breached the implied covenant of good faith and fair dealing and committed a knowing and willful violation of Mass. Gen. L. c. 93A when, despite having actual or constructive notice that it was having difficulty maintaining proper temperatures within the warehouse, Maritime "represented and held out to the public" that its warehouse was adequate for storing plaintiffs' products. D. 4-3 ¶ 18, D. 4-4 ¶ 24, D. 4-5 ¶ 20. The claims in the Underlying Actions will, therefore, raise factual questions concerning the cause of the refrigeration equipment failure, the representations that Maritime made about its ability to maintain certain standards necessary to prevent seafood spoilage, Maritime's notice that it was having difficulty maintaining proper temperatures within the warehouse, Maritime's alleged failure to notify the seafood companies that it had been experiencing difficulties in maintaining proper warehouse temperatures, and Maritime's alleged failure to address the problems that were causing the rising temperatures and the product spoilage.

In the present action, National Union in part seeks a declaratory judgment that it owes no duty to indemnify Maritime under the Policy in connection with the Underlying Actions. The duty to indemnify is triggered "when a judgment within the policy coverage is rendered against [the] insured." Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10 (1989). Given the language of the relevant exclusions of the Policy, this inquiry will raise factual issues pertaining to the nature of the Warehouse temperature failure, namely: whether the damages suffered by the plaintiffs in the Underlying Actions resulted from the breakdown of, failure or improper operating of any refrigeration machinery or equipment such that coverage is excluded by Exclusion "s"; if the cause of the damages was a breakdown of refrigeration machinery or equipment, whether the damages were caused by the "sudden and accidental" breakdown of refrigeration equipment," the "sudden and accidental leakage, escape or discharge of . . . refrigerants" or the "incorrect or improper setting of temperature controls" such that Endorsement No. 8 provides coverage; whether the damages caused by or resulted from deterioration or wear and tear such that Exclusion "e" excludes coverage; and finally whether the damages were caused by or resulted from "infidelity" or a "dishonest act" on the part of Maritime such that Exclusions "k" and "b" exclude coverage.

The declaratory judgment action and the Underlying Actions involve overlapping factual questions as to the nature and cause of the temperature failure at Maritime's Warehouse and Maritime's good faith in responding to the temperature failure. National Union argues that the present action "can be resolved by application of the law to the policy language and certain undisputed facts" and has "very little to do with Maritime Terminal's actions." D. 16 at 9-10. The Court disagrees. In the present case, National Union seeks to prove facts directly relevant (and adverse) to Maritime's defenses in the Underlying Actions. For example, to establish that

there is no coverage available for the incidents at issue in the Underlying Actions, National Union will likely argue that the cause of the Warehouse temperature failure was not a sudden or accidental breakdown of equipment, but rather the breakdown or improper operation of refrigeration machinery. This factual question is relevant to the negligence claims alleged against Maritime in the Underlying Actions. National Union's complaint also suggests that it will argue in the present action that the underlying damages were caused by dishonest acts by Maritime, which bears directly upon the Mass. Gen. L. c. 93A claims in the Underlying Actions. When the coverage questions "turn on factual issues raised in the underlying tort litigation, a stay, generally, should be granted in order to avoid duplicative proceedings, to preserve the insured's prerogative to select the forum and to avoid the risk of inconsistent judgments." Aetna Cas. & Sur. Co., 889 F. Supp. at 540 (citing Metro. Prop. & Liab. Ins. Co. v. Kirkwood, 729 F.2d 61, 62–63 (1st Cir. 1984)).

At oral argument, counsel for National Union cited Exclusion "s" as the "most important" of the Policy exclusions at issue in this case and argued that this exclusion, which excludes coverage in the case of the breakdown of, failure or improper operating of any refrigeration equipment, does not concern the insured's liability to the plaintiffs in the Underlying Actions. June 10, 2015 Hearing Tr. at 10:16-20. In light of the negligence counts in each of the Underlying Actions, the Court does not agree. Whether the refrigeration failure was caused by a sudden or accidental breakdown of equipment, improper operation or wear and tear bears upon Maritime's liability for negligence in the Underlying Actions. Furthermore, the Court sees no basis to focus only on Exclusion "s" in assessing whether to stay this action where the complaint references all of the exclusions enumerated above as possible grounds for exclusion of coverage. The Court also notes that the Underlying Actions may reach different outcomes due to factors

such as different possible intervening causes of the plaintiffs' alleged harm, which may implicate different Policy exclusions.

### B. State Law

State law governs both the present declaratory judgment action and the Underlying Actions. The absence of any issue of federal law weighs in favor of staying this action, although this factor is not dispositive. See Standard Fire Ins. Co., 376 F. Supp. 2d at 231.

### C. Conflict of Interest

"The prospect that such conflicts may be eliminated is a weighty reason for proceeding with a declaratory judgment action." Aetna Cas. & Sur. Co., 889 F. Supp. at 540. "The converse is, of course, also true—the prospect that adjudication of the declaratory judgment action will create conflicts of interest counsels against proceeding with a declaratory judgment action." Standard Fire Ins., 376 F. Supp. 2d at 232. In this case, as a result of the overlapping factual questions in the indemnification analysis and the Underlying Actions, National Union faces a conflict of interest in seeking to prove facts that establish either the lack of a Policy "occurrence" or the applicability of a Policy exclusion where such facts would tend to prove Maritime's liability in the Underlying Actions. See Aetna Cas. & Sur. Co., 889 F. Supp. at 541 (granting stay of declaratory judgment action as to insurer's duty to indemnify where litigating the factual questions underlying the duty to indemnify would "convert [the insurer and the insured] from allies to adversaries with respect to issues that are critical to adjudication of [the insured's underlying tort actions]" and noting that these "efforts would be inconsistent with [the insurer's] obligations as an insurer").

On balance, the <u>Wilton</u> factors weigh in favor of staying National Union's action for a declaratory judgment pending resolution of the Underlying Actions.[2]

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Maritime's motion to stay, D. 12. The case is stayed until January 1, 2016. On or before that date, the parties shall file a joint statement updating the Court on the status of the Underlying Actions and advising the Court as to whether a further stay is necessary.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[2] The Court recognizes that the declaratory judgment action and the motion to stay address both National Union's duty to indemnify and its duty to defend. The parties briefed the issues of the duty to indemnify and duty to defend together. Given that the Court has decided to stay the declaratory judgment as to National Union's duty to indemnify, and as a practical matter National Union is defending Maritime in the Underlying Actions (under a reservation of rights), the Court finds that "considerations of practicality and wise judicial administration" weigh in favor of also staying the declaratory judgment action as to National Union's duty to defend. <u>Wilton</u>, 515 U.S. at 288.