UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil No. 14-cv-14541-DJC |
| MARITIME TERMINAL, INC., | ) ) ) | |
| Defendant. | ) ) ) ) ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                 February 9, 2018

### I. Introduction

Plaintiff National Union Fire Insurance Co. of Pittsburgh, PA ("National Union") has filed this lawsuit against Defendant Maritime Terminal, Inc. ("Maritime") seeking a declaratory judgment that it is not obligated to defend and indemnify Maritime under Warehouse Legal Liability Policy No. 051766034 ("the Policy") in connection with two civil actions in Bristol Superior Court (the "Underlying Actions"). D. 4; D. 50; D. 51 at 1 n.1; D. 54 at 1 n.1. National Union has moved for summary judgment. D. 50. For the reasons discussed below, the Court DENIES the motion without prejudice.

### II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are those that carry the potential "to affect the outcome

1

of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If he does so, the burden shifts to the nonmovant to establish that a genuine material dispute exists." Harley-Davidson Credit Corp. v. Galvin, 807 F.3d 407, 411 (1st Cir. 2015). That is, the nonmoving party "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). In conducting this inquiry, the Court "constru[es] the record in the light most favorable to the non-movant and resolv[es] all reasonable inferences in that party's favor." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008).

### III. Factual Background and Procedural History

National Union issued the Policy to Maritime for the period of April 1, 2013 to April 1, 2014 via a renewal certificate of a previously issued insurance policy. D. 51-1 at 2, 23-24. The Policy provides coverage from National Union to Maritime for liability resulting from "loss or damage to personal property owned by customers in the care, custody or control of [Maritime] for storage, under bills of lading, shipping or warehouse receipt" for specific locations operated by Maritime including 276 MacArthur Drive, Whalers Wharf, New Bedford, MA. D. 51-1 at 4, 7. Pursuant to the Policy, National Union agreed to "pay on behalf of [Maritime] all sums, not exceeding the limit of liability . . . which [Maritime] shall become legally obligated to pay as damages" as a result of the loss or damage to Maritime's customers' personal property. D. 51-1 at 5. As part of the Policy, National Union agreed to "[d]efend any suit against [Maritime] alleging such damage or destruction and seeking damages on account thereof" as well as pay "all costs

taxed against [Maritime] in any such suit and all interest accruing after entry of judgment until [National Union] has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon." Id. That is to say, National Union agreed to defend and indemnify National Union should Maritime incur liability for losses and damages covered under the terms of the Policy.

The Policy also includes a number of exclusions from coverage. D. 51-1 at 5-6. Relevant to this litigation, exclusion (e) provides that the Policy does not cover Maritime if the "[l]oss, damage or expense" resulted "from insects, inherent vice, deterioration, dampness of atmosphere, inadequate warehouse temperature due to overcapacity, [or] for wear and tear." D. 51-1 at 17. Pursuant to exclusion (s), the Policy also excludes coverage for liability or loss resulting from "[b]reakdown of, failure or improper operating of any refrigeration machinery or equipment" caused Maritime's liability, unless the legal liability resulted from "sudden and accidental breakdown of refrigeration equipment" or "incorrect or improper setting of temperature controls by [Maritime] or [Maritime's] employees." D. 51-1 at 6, 18.

In 2014, Kyler Seafood Inc. ("Kyler") and Hygrade Ocean Products, Inc. ("Hygrade") filed the Underlying Actions against Maritime, alleging that Kyler and Hygrade's seafood product had been compromised and spoiled in July and August of 2013 as a result of equipment breakdown at Maritime's warehouse. D. 51-2 at 6-7; D. 51-3 at 6-7. Each complaint additionally alleged that Maritime had had difficulty in maintaining proper temperatures in the warehouse and the deep freezer containers where the seafood product was stored. D. 51-2 at 7; D. 51-3 at 7. Accordingly, both Kyler and Hygrade sought damages from Maritime for a number of state claims. D. 51-2 at 10, 12-13, 15, 17; D. 51-3 at 8-11.

3

Thereafter, on December 18, 2014, National Union instituted this action, requesting that this Court determine whether National Union was obligated under the Policy to defend and indemnify Maritime in connection with the Underlying Actions. D. 4 at 1. Maritime moved to dismiss or stay the action on February 10, 2015. D. 12. The Court allowed the motion to stay until December 15, 2016. D. 26; D. 34; D. 40. At a conference with the parties shortly thereafter, the Court lifted the stay, required initial disclosures and set a summary judgment schedule at National Union's request. D. 44. National Union subsequently filed a motion for summary judgment. D. 50. The Court heard the parties on the pending motion and took the matter under advisement. D. 61.

**IV. Discussion**

    **A.** **The Court Denies National Union's Motion for Summary Judgment**

        *1.* *The Court Denies National Union's Motion for Summary Judgment with Respect to its Duty to Defend Maritime Under the Policy*

National Union first seeks a declaration stating that it is not obligated under the Policy to defend Maritime in connection with the Underlying Actions. D. 51 at 1.

It is well-settled Massachusetts law that an insurer's duty to defend is broader than its duty to indemnify. See Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 403 (1st Cir. 2009). To determine whether the insurer has a duty to defend, the Court must compare the facts alleged in the underlying third-party complaint against the provisions of the insurance policy. Open Software Found., Inc. v. U.S. Fid. & Guar. Co., 307 F.3d 11, 15 (1st Cir. 2002). "[I]f the allegations of the [underlying] complaint are reasonably susceptible of an interpretation that they state a claim covered by the terms of the insurance policy," then the insurer has a duty to defend. HDH Corp. v. Atl. Charter Ins. Co., 425 Mass. 433, 436 (1997) (citing Liberty Mut. Ins. Co. v. SCA Servs., Inc., 412 Mass. 330, 331-32 (1992)). The "allegations in the underlying complaint

4

need only show 'a possibility that the liability claim falls within the insurance coverage' rather than that the allegations 'specifically and unequivocally make out a claim within the coverage.'" Friel Luxury Home Constr., Inc. v. ProBuilders Specialty Ins. Co. RRG, No. 09-cv-11036-DPW, 2009 WL 5227893, at *2 (D. Mass. Dec. 22, 2009) (quoting Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394 (2003)).

Initially, the insured party bears the burden of showing that the allegations in the underlying third-party complaint fit within the covered risks in the policy. Essex, 562 F.3d at 404. Once satisfied, the burden shifts to the insurer to demonstrate that one or more of the exclusionary provisions applies and there is no duty to defend. Id. Courts must abide by the "straightforward meaning of policy language" when possible, Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 47 (1st Cir. 2003), but "[t]o the extent (if at all) that any ambiguity permeates a policy exclusion, it must be construed strictly against the insurer." B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 39 (1st Cir. 2004).

The Court denies National Union's summary judgment motion as to its duty to defend. The Policy provides that National Union must "[d]efend any suit against [Maritime] alleging such damage or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent" if afforded by the terms of the Policy. D. 51-1 at 5. The Policy covers liability imposed because of "loss or damage to personal property owned by customers in the care, custody or control of [Maritime] for storage." D. 51-1 at 4. That is what is alleged here.

There are a number of exclusions alleged in the complaint, but National Union has not shown, based on any record of undisputed facts here, that any exclusion bars coverage as a matter of law. For one example, National Union relies upon exclusion (s), D. 51 at 1-3, 5-6, which provides that the Policy does not cover Maritime's liability against loss or damage caused by or

5

resulting from "breakdown of, failure or improper operating of any refrigeration machinery or equipment," D. 51-1 at 6. The Policy carves out an exception to Policy exclusions, however, providing that "sudden and accidental breakdown[s] of refrigeration equipment" are still covered by the insurance plan. D. 51-1 at 18. As a result, the Policy assigns National Union with a duty to defend if the complaints in the Underlying Actions raise the possibility that the liability claim is for loss or damages of property in Maritime's care except in the case of a breakdown or failure of the refrigeration that was not sudden and accidental.

Here, allegations in both complaints provide a basis for concluding that National Union has a duty to defend. Both complaints assert that Maritime had "difficulties in maintaining property temperatures in the Warehouse" "due to certain equipment breakdown" that caused the plaintiff's property to be compromised. D. 51-2 at 6-7; D. 51-3 at 6-7. That is, both complaints allege that the plaintiff's property was damaged while in Maritime's storage and that a breakdown in refrigeration caused the damage. D. 51-2 at 6-7; D. 51-3 at 6-7. Even though this could indicate that exclusion (s) applied such that there was no duty to defend, it does not foreclose the possibility that the refrigeration breakdown was due to sudden and accidental events such that National Union must defend Maritime under the Policy. This is enough to demonstrate a duty to defend may exist. See Friel, 2009 WL 5227893, at *2.

Maritime has thus carried its initial burden of showing that the allegations in the underlying complaint fit within the covered risks of the Policy, such that the burden shifts to national Union to show that the exclusionary provision applies. Essex, 562 F.3d at 404. National Union has failed to do so here, where it has not indicated any basis in the Policy language itself or undisputed facts that would preclude coverage as a matter of law. Cf. Lexington, 338 F.3d at 47 (holding insurer had no duty to defend where the policy unambiguously excluded a duty to defend and no other

6

policy language otherwise obligated the insurer to assume responsibility for legal fees). Because the allegations in the complaint need show a possibility that the liability claim falls within the insurance coverage, Friel, 2009 WL 5227893, at *2, and all ambiguities related to a policy exclusion are construed against the insurer, B & T Masonry, 382 F.3d at 39, the Court cannot declare now that National Union does not have a duty to defend Maritime. Furthermore, although discovery is now complete in the Underlying Actions, no discovery has been done in this case nor has discovery in the Underlying Actions been cited here. There is no factual basis before this Court presently, undisputed or otherwise, to rule in National Union's favor at this time.

Accordingly, the Court denies National Union's motion for summary judgment without prejudice regarding National Union's duty to defend Maritime in the Underlying Actions.

2. *The Court Denies National Union's Summary Judgment Motion with Respect to Its Duty to Indemnify Maritime Under the Policy*

National Union next argues that this Court should declare that it does not need to indemnify Maritime for damages stemming from the Underlying Actions because the Policy precludes such coverage under two separate exclusions. D. 51 at 5-8. The Court declines to make such a declaration and denies National Union's motion for summary judgment.

Where an insurer's duty to defend is measured by the allegations in the third-party complaint, the duty to indemnify "is determined by the facts as they unfold at trial or in a settlement agreement, rather than simply the pleadings." House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co., 775 F. Supp. 2d 302, 310 (D. Mass. 2011). "The dispositive issue in an indemnification analysis is whether the third party plaintiff's theory of litigation, and the eventual settlement or result, 'encompassed allegedly wrongful conduct by the [insured] in his insured capacity, as defined in the [insurance] policy.'" Id. at 311 (quoting D'Amelio v. Fed. Ins. Co., No. 02-cv-12174, 2004 WL 937328, at *7 (D. Mass. Apr. 28, 2004)) (alterations in original). Accordingly,

7

a declaratory judgment as to an insurer's duty to indemnify is not ripe until the underlying action has determined liability or adjudicated factual disputes. See Newell-Blais Post No. 443, Veterans of Foreign Wars of U.S., Inc. v. Shelby Mut. Ins. Co., 396 Mass. 633, 638 (1986); see also Narragansett Bay Ins. Co. v. Kaplan, 146 F. Supp. 3d 364, 372 (D. Mass. 2015), appeal dismissed (Apr. 20, 2016); Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc., 152 F. Supp. 3d 15, 19-20 (D. Mass. 2015). Here, as of the motion hearing, the parties agreed that the Underlying Actions have not been adjudicated on the merits or settled. See D. 51 at 5 (explaining that "factual discovery has recently been completed"); D. 54 at 1 (stating that the Underlying Actions are still pending). Accordingly, National Union's declaratory judgment as to its duty to indemnify is not yet ripe for the Court's consideration where, as here, the underlying action has not determined the insured's liability or resolved factual disputes.

Therefore, the Court denies summary judgment as to National Union's duty to indemnify also without prejudice.

> **B. The Court Denies Maritime's Request for Additional Discovery Pursuant to Fed. R. Civ. P. 56(d)**

The Court is aware that Maritime has alternatively moved for discovery pursuant to Fed. R. Civ. P. 56(d). D. 54 at 2, 11-16. In light of the Court's denial of summary judgment, the Court denies this request as moot. The Court will instead enter an order seeking counsel's input about setting a further schedule in this matter.

## V. Conclusion

For the foregoing reasons, the Court DENIES without prejudice National Union's motion for summary judgment, D. 50.

**So Ordered.**

/s/ Denise J. Casper

8

United States District Judge